UNITED STATES, Appellee

v.

Emile S. BASS, Aviation Boatswain's Mate (Launching and Recovery Equipment) First Class, U.S. Navy, Appellant.

Nos. 93–0538.
CMR No. 91 2180.

U.S. Court of Military Appeals.

Argued March 16, 1994.

Decided Sept. 15, 1994.

For Appellant: *Lieutenant Lisa M. Higdon, JAGC, USNR* (argued).

For Appellee: *Major Laura L. Scudder, USMC* (argued); *Colonel T.G. Hess, USMC, and Commander S.A. Stallings, JAGC, USN* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During May and June of 1991, appellant was tried *in absentia* by a military judge sitting as a general court-martial at Naval Station, Mayport, Florida. Contrary to pleas entered on his behalf by the military judge, he was found guilty of larceny (7 specifications), wrongful appropriation (4 specifications), and forgery, in violation of Articles 121 and 123, Uniform Code of Military Justice, 10 USC §§ 921 and 923, respectively. He was found not guilty of attempted larceny, in violation of Article 80, UCMJ, 10 USC § 880. He was sentenced to a bad-conduct discharge, confinement for 3 years, total forfeitures, and reduction to the lowest enlisted grade. On July 19, 1991, the convening authority approved the sentence. On July 31, 1992, the Court of Military Review affirmed the findings of guilty and the sentence in an unpublished opinion.

On June 15, 1993, this Court granted review of the following issue:

WHETHER APPELLANT WAS ERRONEOUSLY TRIED IN ABSENTIA, BECAUSE NO PROOF WAS PRESENTED THAT APPELLANT KNEW THAT THE TRIAL WOULD BE HELD DESPITE HIS ABSENCE.

We hold that appellant's trial *in absentia* was lawful. *United States v. Sharp*, 38 MJ 33 (CMA 1993); RCM 804, Manual for Courts–Martial, United States, 1984.[1]

1. This Rule provides, in pertinent part, the following:

Appellant was arraigned on May 1, 1991. Prior to receiving appellant's pleas, the military judge granted a defense motion for a mental examination of appellant pursuant to RCM 706. The court-martial reconvened on May 24, 1991, but appellant was not present. Defense counsel stated:

> The defense's position is that he did not voluntarily absent himself because he was not aware that his trial could be—could have gone forth without—within his absence, and that the defense would request a continuance until either proof of voluntary absence—to show that he was aware it would go in his absence or until he returns.

Trial counsel responded in regard to continuing the case:

> Sir, the Government has five witnesses on the merits. One from USS STARK; two from USS SIMS; one from USS PAUL; and, one from USS FORRESTAL. All those ships are in the process of preparing to deploy or get underway for significant period of time, within the next week to 10 days. It's the Government's position that we should at least do those witnesses in order to preserve their testimony before they deploy and operational commitments would—would hinder their appearing again.

Before hearing testimony on the voluntariness of appellant's absence, the results of appellant's competence examination were offered by trial counsel. The results, dated May 9, 1991, included a statement that appellant "possesses sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in the defense." Trial counsel then called five witnesses to testify about the circumstances surrounding appellant's absence.

Aviation Machinist's Mate First Class Bullock testified that he was responsible for mustering the personnel in appellant's unit. On the morning of May 14, 1991, appellant informed Bullock that he "had an appointment here at Naval Legal Services, and that his court-martial [was] to follow." Bullock also testified that appellant did not appear to be under the influence of drugs or alcohol or physically injured.

Lieutenant Berry, the legal officer in appellant's unit, testified that the local hospitals and police were contacted in an unsuccessful effort to locate appellant. He also testified that appellant was neither on special liberty or leave nor was he excused from appearing at his court-martial. Special Agent (SA) Knight of the Naval Investigative Service testified that he contacted appellant's relatives in the local area, yet was not successful in locating him. SA Knight also testified that he instituted a nation-wide computer alert for appellant; he went as well to the Jacksonville International Airport to search for appellant, and he asked the airlines to notify the Navy if they saw appellant.

It was undisputed that, after appellant's mental examination results were received by defense counsel, trial and defense counsel had agreed to proceed to trial on May 14, 1991.[2] Defense counsel conceded that appellant "may have known about the trial date[.]" However, defense counsel argued that appellant was unaware of the consequences of not appearing for trial.

The military judge then ruled as follows:

> The one thing that bothers me about this particular situation is that it's apparent that Petty Officer Bass is unaware that he can be tried in absentia. However, after a close reading of the Manual provisions, I do not believe that factor is controlling. *It is clear from the evidence that*

(b) *Continued presence not required.* The further progress of the trial to and including the return of the findings and, if necessary, determination of a sentence shall not be prevented and the accused shall be considered to have waived the right to be present whenever an accused, initially present:

(1) Is voluntarily absent after arraignment (whether or not informed by the military

judge of the obligation to remain during the trial)[.]

2. The psychiatric evaluation board's conclusion that appellant was mentally competent to stand trial was never challenged by either trial or appellate defense counsel. *Cf. United States v. Cook*, 20 USCMA 504, 43 CMR 344 (1971).

*has been presented that the accused was aware of the scheduled proceedings on the 14th of May, that's when Petty Officer Bass's court-martial had been scheduled. It's equally clear from the evidence presented that Bass has chosen, intentionally, to avoid the proceedings by absenting himself. The fact that the accused was aware of the scheduled proceedings and intentionally missed them by absenting himself from the Navy, to me, makes his absence voluntary.* In doing so, he forfeits his right to be present. Normally, I would grant a continuance under these circumstances, it's really unknown when Petty Officer Bass may surface, it's also clear that essential witnesses for the Government are soon to disperse.

\* \* \*

Well, I would like to delay these proceedings, but it does appear that the Government would be prejudiced in presentation of this case by allowing these proceedings to delay further. And, for that reason, I'm going to allow the Government to proceed on the merits with witnesses that will not be available in the very near future and I think under these circumstances it is understood that the court will enter pleas of NOT GUILTY to all Charges and Specifications on behalf of the accused.

(Emphasis added.)

Trial counsel then called each of his five witnesses who were "in the process of preparing to deploy or get underway for [a] significant period of time, within the next week to 10 days." After the witnesses testified, the court-martial adjourned. Appellant's court-martial reconvened on June 4, 1991, and again appellant was not present. Over defense objection and with no indication of when appellant would appear, the military judge again ruled that the court-martial would proceed. Appellant was sentenced *in absentia* on June 11, 1991.

\-\-\-

Before this Court appellant initially argues that his absence from trial was not shown to be voluntary as required by RCM 804(b) because there was no proof that he was aware of the consequences of his absence.

He particularly asserts that there was no evidence introduced that he was expressly warned that his trial would continue without him. Final Brief at 4. *See* RCM 804, Discussion (cannot proceed with trial "unless the accused was aware that the court-martial would be held during the period of the absence"); *see* Drafters' Analysis to RCM 804(b), Manual, *supra* at A21–40 to A21–41. In any event, appellant also argues that RCM 804(b) is unconstitutional, as applied in his case. He asserts that RCM 804(b) unlawfully permits his trial *in absentia* based merely on his initial presence at arraignment, rather than on his presence at "the commencement of trial." *See Crosby v. United States*, — U.S. —, —, 113 S.Ct. 748, 752, 122 L.Ed.2d 25 (1993). We reject both arguments.

Regarding appellant's first argument, in *United States v. Sharp*, 38 MJ 33 (1993), this Court squarely held that "[t]here is no requirement that [an accused] be warned that he has a right to be present and that the trial might continue in his absence." 38 MJ at 35, *citing Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). However, we also recognized that under RCM 804(b)(1), the accused's absence must be shown to be voluntary. *United States v. Sharp, supra.* Furthermore, the Supreme Court has clearly established that a voluntary absence constitutes an effective waiver of the right to be present at trial. *United States v. Crosby*, — U.S. at —, 113 S.Ct. at 751–52; *Taylor v. United States*, 414 U.S. at 20, 94 S.Ct. at 196; *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912). *See also Brookhart v. Janis*, 384 U.S. 1, 4 n. 4, 86 S.Ct. 1245, 1247 n. 4, 16 L.Ed.2d 314 (1966), *cited in United States v. Taylor*, 478 F.2d 689, 691 n. 4 (1st Cir.1973), *aff'd, Taylor v. United States, supra. See generally Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Finally, in *Crosby*, the Supreme Court held that an effective waiver of the right to be present at trial, one that is knowing and voluntary, is made when the defendant is intentionally absent once trial has begun. 113 S.Ct. at 752 (relying on *Diaz v.*

*United States, supra*); *Taylor v. United States, supra; see United States v. Sharp, supra* at 38 (Wiss, J., concurring in part and in the result).[3]

■ In the case *sub judice,* the military judge did opine that he was troubled "that Petty Officer Bass [wa]s unaware that he c[ould] be tried in absentia." However, the military judge made specific findings of fact that appellant "was aware of the scheduled proceedings on the 14th of May, . . . [and] that [appellant] has chosen, intentionally, to avoid the proceedings by absenting himself." *See United States v. Johnson,* 7 MJ 396, 397 (CMA 1979). Moreover, defense counsel never proffered an explanation or justification for appellant's absence. *Cf. United States v. Camacho,* 955 F.2d 950, 954 (4th Cir. 1992) (defendant absent due to weather conditions); *United States v. Mackey,* 915 F.2d 69, 73 (2d Cir.1990) (transportation problems). The Supreme Court has noted that "there can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward." *Illinois v. Allen,* 397 U.S. 337, 349, 90 S.Ct. 1057, 1063, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring), *quoted in Taylor v. United States,* 414 U.S. at 20, 94 S.Ct. at 196. In these circumstances, we conclude that voluntary absence within the meaning of RCM 804(b) does not require a showing that appellant received warnings from either the military judge or his command concerning the consequences of his absence.[4] *Cf. United States v. Peebles,* 3 MJ 177 (CMA 1977) (a 9–month delay between arraignment and resumption of court-martial).

■ Turning to appellant's next claim, we are equally unpersuaded that the military judge's application of RCM 804(b) in this case denied him any Constitutional right. *See Taylor v. United States,* 414 U.S. at 18, 94 S.Ct. at 195; *United States v. Ellison,* 13 MJ 90 (CMA 1982); *see also United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (right to presence at trial "rooted" in Confrontation Clause of Sixth Amendment and to some extent in Due Process Clause of Fifth Amendment). In *United States v. Sharp, supra,* this Court acknowledged the similarity and differences between RCM 804(b) and Fed.R.Crim.P. 43(b).[5] 38 MJ at 35; 38 (Wiss, J., concurring in part and in the result); and 40 (Sullivan, C.J., concurring in the result). *See United States v. Ellison,* 13 MJ at 91; *see also* Drafters' Analysis of RCM 804, Manual, *supra* at A21–40. Moreover, in *Taylor v. United States, supra,* the Supreme Court held that the federal procedural rule passes Constitutional muster. Accordingly, if appellant was present at the commencement of trial, as was the case in *Taylor,* then his voluntary absence was a waiver of his Constitutional right to be present at subsequent stages of trial. *See also Crosby v. United States,* —— U.S. at ——, 113 S.Ct. at 752 (Fed.R.Crim.P. 43 violated if not present at "commencement of trial").

■ In the military justice system, arraignment is the commencement of trial. *United States v. Sharp, supra* at 39 (Wiss, J., concurring in part and in the result) and 40 (Sullivan, C.J., concurring in the result); *United States v. Houghtaling,* 2 USCMA 230, 8 CMR 30 (1953); *see also United States v. Johnson, supra.* See

3. We note that the definition of voluntary absence contained in the Discussion to RCM 804(b) is consistent with the language in *Crosby, Diaz,* and *Taylor. See United States v. Sharp,* 38 MJ 33, 35 n. 1 (RCM 804(b), Discussion, includes in the definition of "voluntary absence" a knowledge "of the scheduled proceedings" and an intentional failure to appear).

4. We agree that it would be good practice at arraignment for military judges to warn a defendant of the consequences of a voluntary absence.

5. Fed.R.Crim.P. 43 provides, in pertinent part, the following;

    (b) *Continued Presence Not Required.* The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present,

        (1) is voluntarily absent after the trial has commenced (whether or not the defendant has been informed by the court of the obligation to remain during the trial)[.]

*generally* W. Winthrop, *Military Law and Precedents* 236–46 (2d ed. 1920 Reprint) (motion for continuance must be made during arraignment or trial on the merits will immediately follow). In the case *sub judice*, appellant was present at his arraignment and subsequently absented himself voluntarily from the court-martial proceedings. Therefore, application of RCM 804(b) by the military judge in this case did not deny appellant his Constitutional right to be present at his court-martial. *See generally Taylor v. United States, supra.*

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.